**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: BRIDGESTONE FIRESTONE | ) | |
| INC. TIRES PRODUCTS LIABILITY | ) | Master File No: IP 00-9374-C-B/MS |
| LITIGATION | ) | MDL No. 1373 |
| | ) | |
| KIMBERLY CREEL, | ) | Case No: 1:07-cv-5838-SEB-JMS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIDGESTONE-FIRESTONE, INC. et al | ) | |
| Defendants. | ) | |

**ENTRY ON MOTION TO REMAND**
**AND MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Kimberly Creel, was injured in a single car accident which occurred on

August 27, 1998, in Minden, Louisiana.  Creel was then, and apparently remains, a

resident of Louisiana.  On May 10, 2001, she joined a multi-plaintiff lawsuit which had

been filed in Mississippi state court against Ford Motor Company, the manufacturer of

the 1991 vehicle she was driving at the time of the accident, and Bridgestone/Firestone

North American Tire, LLC, the manufacturer of the tires which were on the vehicle at the

time of the accident.  That lawsuit alleged product defects and, subsequent to Creel's

joinder as a plaintiff, it was removed to federal district court in Mississippi from which it

was transferred to our docket at the direction of the Multi District Litigation Panel for

consolidation with the other, related cases based on similar allegations.

Following completion of the MDL processing, we remanded the case to the

original forum, the Mississippi trial court, where, over Plaintiff's objection, her claim was

severed and transferred for disposition in another Mississippi state court.  Eventually,

issues related to the severance and change of venue reached the Mississippi Supreme

Court, which ruled that Plaintiff's claims had been misjoined from the beginning due to

her lack of Mississippi residency at the time she joined as a party to the case and the fact

that the accident in which she was injured had occurred in Louisiana.  The Mississippi

Supreme court ruled that proper jurisdiction before the Mississippi lower courts had never

been established.  *Creel v. Bridgestone/Firestone North American Tire, LLC,* 950 So.2d

1024 (Miss. 2007).  Plaintiff's claim was therefore dismissed without prejudice. *Id.* at

1029.

Plaintiff thereafter re-filed her claim in Louisiana state court from which it was

removed by Ford and Bridgestone/Firestone to the United States District Court for the

Western District of Louisiana.  For the first time, Plaintiff named in her Complaint

additional Defendants Bennie Gorham Chevrolet, Pelican State Tire and Auto Service,

Inc. and Pelican State Tire and Automotive, LLC, (referred to jointly as "Pelican Tire").

These additional defendants are all residents of Louisiana and, respectively, had sold the

vehicle and tires to Creel.  Ford and Bridgestone/Firestone removed the case to federal

court despite an apparent absence of diversity of citizenship, claiming that these newly

joined defendants were fraudulently added in an effort by Plaintiff to defeat federal

diversity jurisdiction.

After removal of the case to the Western District of Louisiana, Plaintiff sought to

have it remanded to state court, but before the motion to remand was ruled upon by the

Louisiana federal district court, the litigation was again transferred to our docket as part

of the MDL.  Defendants Ford and Bridgestone/Firestone have filed a motion for

summary judgment with us, consideration of which we shall momentarily defer in order

to determine, first, whether the case was properly removed from Louisiana state court to

federal court or remand is required.

*MOTION TO REMAND*

As a general matter, federal law relating to removal strives to achieve relative

consistency among all federal circuits.

> The federal courts spread across the country owe respect to each other's
> efforts and should strive to avoid conflicts, but each has an obligation to
> engage independently in reasoned analysis.  Binding precedent for all is set
> only by the Supreme Court, and for the district courts within a circuit, only
> by the court of appeals for that circuit.

*In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C.Cir.1987);

*see also*, *McMasters v. U.S.*, 260 F.3d 814, 819 (7th Cir. 2001)("Only where the law of the

United States is specifically intended to be geographically non-uniform should the

transferee court apply the circuit precedent of the transferor court.").  Accordingly, we

shall look to Seventh Circuit decisions to determine whether removal from the Louisiana

state court to federal court was proper.  *Halkett v. Bridgestone/Firestone, Inc.*, 128

F.Supp.2d 1198, 1200 (S.D. Ind. 2001).

The joinder of non-diverse parties can not destroy diversity if the joinder is

fraudulent, and a court is permitted to look beyond the pleadings in conducting the required analysis of whether fraudulent joinder actually occurred.  *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993); *Faucett v. Ingersoll-Rand Mining & Manufacturing Co.,* 960 F.2d 653, 654-55 (7th Cir. 1992); *In re: Bridgestone/Firestone Inc. Products Liability Litigation*, 204 F.Supp.2d 1149, 1153 (S.D.  Ind. 2002).  Joinder of a party is deemed fraudulent, obviously, if outright fraud is shown to have occurred in crafting the pleadings, but joinder is also fraudulent if it is clear that the plaintiff has no possibility of success in pursuing her claims against the non-diverse party.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *Conk v. Richards & O'Neil, LLP,* 77 F.Supp.2d 956, 640 (S.D. Ind. 1999).

Here, Ford and Bridgestone/Firestone contend that the inclusion of the car dealership and tire sellers as defendants is clearly fraudulent because Creel has no possibility of successfully pursuing those claims against them.  Defendants argue that the Louisiana statute of limitations governing such claims against Gorham Chevrolet and Pelican Tire expired long ago, and, where a statute of limitations has clearly run, thereby preventing the successful prosecution of a claim against certain defendants, those defendants are deemed to have been fraudulently joined.  *LeBlang Motors, LTD. v. Subaru of America*, 148 F.3d 680, 690 (7th Cir. 1998).  Ford and Bridgestone/Firestone base their summary judgment motion on this same theory:  that the statute of limitations has expired, foreclosing any possible relief to the Plaintiff based on her claims against them.  The Louisiana Civil Code prescription provisions provide the key for resolving

both Plaintiff's motion to remand and Defendants' motion for summary judgment.

Ford and Bridgestone/Firestone are product "manufacturers," as that term is defined in the Louisiana Product Liability Act.  *See* La. Rev. Stat. 9:2800.53.  That statute sets out the exclusive theories of liability that can successfully be brought against manufacturers for damages emanating from their products.  La. Rev. Stat. 9:2800.52. Gorham Chevrolet and Pelican Tire are "sellers of products," and as such, under certain circumstances, are subject to being treated as manufacturers under Louisiana's Product Liability Act.  La. Rev. Stat. 9:2800.53.  If a seller is not also a manufacturer, it can nonetheless be subject to liability to an injured party under either a negligence or failure-to-warn theory.  LSA-C.C. Art. 2545; *Delanzo v. ABC Corp.*, 572 So.2d 648 (La.App. 1990).

Plaintiff's Petition For Damages does not specify whether her damage claims against Gorham Chevrolet and Pelican Tire are based on their identities as manufacturers or sellers; but, because both negligence and product liability actions in Louisiana are subject to a prescription period of one year, we need not require specificity on that issue. *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 489 (5th Cir. 2001); LSA-C.C. Art. 3492.

Defendants note that the accident giving rise to Creel's injuries for which she seeks to recover in this litigation occurred more than eight years prior to her initiating any suit or claims against Gorham Chevrolet and Pelican Tire.  Because the limitations period

had long ago expired, Creel stands no chance of prevailing on her claims against those sellers.  Ford and Bridgestone/Firestone also contend that Creel's claims against them are similarly time-barred:  Creel was required to file her action within one year of the accident, which clearly did not happen.  Indeed, her first attempt to sue them in Mississippi state court also occurred well after the one-year prescription period.

Creel counters, arguing that the Louisiana prescription period was tolled by her joining the Mississippi multi-plaintiff lawsuit in May, 2001, or, in the alternative, that the one-year prescription period did not begin to run until she discovered or should have discovered that she had a cause of action against Gorham Chevrolet and Pelican Tire, which, she contends, did not occur before sometime in August 2000.  Assuming that was the point in time when the period of prescription under Louisiana law began to run, Creel's claims against Ford and Bridgestone/Firestone have not expired.

Nowhere in the briefs filed in support of Plaintiff's Motion to Remand or in her opposition to the Defendants' Motion for Summary Judgment does Creel explain the reason that the Louisiana one-year statute of limitations does not foreclose her claims against Gorham Chevrolet and Pelican Tire, given that Creel did not name Gorham Chevrolet or Pelican Tire as defendants in the 2001 Mississippi suit or otherwise attempt to bring them into that case.  Not until this lawsuit was filed in 2007 were these defendants sued by her.  Certainly by the time of Creel's joinder in the Mississippi action against Ford and Bridgestone/Firestone, in May of 2001, she had sufficient knowledge of the nature of her claim to allow her - indeed, to require her - to pursue whatever action

she might have against those who sold her the allegedly defective automobile and tires in

addition to having sued those who manufactured them.  No facts have been adduced that

suggest otherwise.  Consequently, we hold that, because the period of prescription had

run on her claims against Gorham Chevrolet and Pelican Tire before she included them as

defendants, their joinder in this lawsuit is fraudulent.  Removal of the case from state

court to federal court by Defendants was therefore proper based on diversity jurisdiction

and the Motion to Remand must be denied.

*SUMMARY JUDGMENT MOTION*[1]

     The issue of timeliness with regard to Plaintiff's claims against Ford and

Bridgestone/Firestone is not as easily resolved as it was for the newly named defendants.

Without addressing the issues of improper venue and lack of jurisdiction, Creel argues

that her 2001 action in Mississippi was timely because Mississippi's statute of limitations

is three years and she had filed her case within three years of the accident.  Thus, the

Mississippi courts had jurisdiction over her case at the time her case was filed there.  In

attempting to counter Defendants' argument that her claims were nonetheless prescribed

based on Louisiana law, Creel cites LSA-C.C. Art. 3462, which provides:

> Prescription is interrupted when the owner commences action against the
> possessor, or when the obligee commences action against the obligor, in a
> court of competent jurisdiction and venue. If action is commenced in an
> incompetent court, or in an improper venue, prescription is interrupted only

---

[1]On December 22, 2008, several days after a reply brief was due in support of their
motion, Defendants filed a motion seeking leave to file a reply brief.  In light of the additional
time given to Plaintiff within which to file her response brief, the Court <u>grants</u> Defendants'
Motion For Leave to File Reply Memorandum and accepts the reply brief as submitted .

as to a defendant served by process within the prescriptive period.

Without citing any published, supportive precedent, Creel maintains that, despite the fact

that the Louisiana prescriptive period of one year had expired more than twenty months

prior to the erroneous filing of her action in Mississippi, LSA-C.C. Art. 3462 should

properly be read to revive the Louisiana limitations period.  This is, at best, a strained

interpretation of that statute.  Unless tolled prior to its expiration, a limitations period,

after it has run, cannot have new life breathed into it by a belated filing of the lawsuit in

an entirely new jurisdiction.

In *Creel v. Bridgestone/Firestone North American, LLC,* 950 So.2d 1024 (Miss.

2007), the Mississippi Supreme Court ruled that Creel's claim had been improperly

joined at the outset and that Mississippi courts had no jurisdiction over a Louisiana

claimant seeking damages for injuries resulting from an accident which occurred in

Louisiana.  As the Louisiana Civil Code makes clear, for prescription to be interrupted,

the court where the action was filed must have been one of "competent jurisdiction."

Creel again attempts to explain away the effect of her mis-filing in Mississippi and

the Mississippi Supreme Court's ruling that no jurisdiction existed by contending that the

finding of no jurisdiction was based upon a change in Mississippi law effectuated by

*Janssen Pharmaceutica, Inc. v. Armond*, 866 So.2d 1092 (Miss. 2004), which was handed

down after she joined the multi-plaintiff lawsuit pending in Mississippi.  Whether that

holding actually represents a change in Mississippi law and, if so, whether it has any

bearing on the issues before us, we need not decide because we are simply unable to

accept Creel's interpretation of the Mississippi high court's holding in *Armond*. *Armond* involved the misjoinder of plaintiffs, all of whom resided in Mississippi and all of whom claimed damages resulting from multiple unrelated incidents. *Id.* at 1094. That case has nothing to do with a Mississippi trial court's power to exercise jurisdiction over a tort claim between non-residents based on an incident occurring outside Mississippi's boundaries. *See Creel,* 950 So.2d at 1028-29. In Creel's case, the Mississippi Supreme Court made clear that, because of those very circumstances, the state trial court never acquired jurisdiction over her claim. *Id.* Even if we were to ignore the fact that Creel's Mississippi filing came after the one-year prescription period had expired and even if we were to accept Plaintiff's interpretation of LSA-C.C. Art. 3462, it remains clear that, under Louisiana law, in order for the filing of the foreign (Mississippi) action to effect a tolling, that foreign action must have been filed in a court of competent jurisdiction, which obviously it was not.

Having failed on that theory, Plaintiff is left with only one other possible avenue for surviving summary judgment - an application of the doctrine of *contra non valentem* (alternative spelling *valentum)* according to which commencement of the running of the limitations period governing Creel's claims would not have occurred until she discovered that she had a cause of action. It is a slender reed, but we shall examine it nonetheless.

The doctrine of *contra non valentem* is an equitable doctrine which governs the accrual of a cause of action. Under Louisiana law, this principle embodies an element of fairness by holding "that prescription does not run against a person who could not bring

his suit." *Carter v. Haygood,* 892 So.2d 1261, 1268 (La. 2005).  Ford and

Bridgestone/Firestone do not dispute that Louisiana law recognizes that a cause of action

does not accrue until a plaintiff is aware or should be aware of its existence.  *See Paragon*

*Development Group, Inc. v. Skeins*, 700 So.2d 1279 (La. App. 1997).  However, when the

face of the petition makes clear that the prescriptive period has run on a claim, it is the

claimant's burden to show that the deadline was extended or suspended by some properly

applied exception.  *Id*. at 281.  To establish such an exception, Plaintiff has invoked the

doctrine of *contra non valentem*.

The Louisiana Supreme Court has defined four circumstances under which *contra*

*non valentem* applies to prevent the running of prescription:  (1) where there was some

legal cause which prevented the courts or their officers from taking cognizance of or

acting on the plaintiff's action; (2) where there was some condition coupled with a contract

or connected with the proceedings which prevented a creditor from suing; (3) where the

debtor himself has done something to prevent the creditor from availing himself of his

cause of action; and (4) where the cause of action is not known or reasonably knowable by

the plaintiff, even though this ignorance is not induced by the defendant.  *Carter v.*

*Haygood*, 892 So.2d at 1268.  In attempting to salvage her claim, Creel relies principally

on the fourth enumerated exception, often referred to as the "discovery rule"; as an

afterthought, she also includes in her brief the unsubstantiated assertion that Ford and

Bridgestone/Firestone somehow prevented her from obtaining information relative to the

precise nature of the defects with the tire and/or problems with the tire and vehicle

combination.

Because the burden of proving the existence of facts warranting the application of the doctrine of *contra non valentem* is on the party asserting it (here, Creel), and because there is no evidence in the record to support a finding that Ford or Bridgestone/Firestone did in fact take any action(s) that would have prevented her from discovering the cause of her accident, we shall not analyze further the appropriateness of applying this doctrine based upon the Defendants' conduct.  Moving on, then, to decide whether the "discovery rule" applies so as to suspend the running of the limitations period, we must consider when Creel had sufficient knowledge of her cause of action to deem it to have accrued against the Defendants.

Creel's testimony in her deposition is limited simply to her statement that, immediately prior to losing control of her vehicle, she heard a "slap" sound, followed by a "heavy thud," and that it was her "guess" that the sounds she heard were the sound of the tire tread separating from the tire and its hitting the vehicle.  She argues that, as a nineteen year-old female[2] college student, she could not have been expected to perceive that the tire tread separation problems she had experienced may have been the fault of manufacturing defects caused by Ford and/or Bridgestone/Firestone.  In any event, she maintains, the mere knowledge that a tire might have failed is not notice that a defect existed; therefore, no cause of action based on such a defect could have accrued as of the time of the

---

[2]We fail to see <u>any</u> relevance in that particular fact, but include it in our recitation because Creel's attorney did.

accident.  Creel argues instead that the cause of action accrued at the earliest when she

received the joint recall notice from Ford and Bridgestone/Firestone, which Ford and

Bridgestone/Firestone issued sometime in August of 2000.  Creel asks us to give her the

benefit of the same reasoning we applied in denying summary judgment against other

MDL plaintiffs who had brought their nearly identical claims under California and

Arizona law.

In *In re: Bridgestone/Firestone, Inc.,* 200 F.Supp.2d 983 (S.D. Ind. 2002), we

denied summary judgment to Bridgestone/Firestone with regard to three individual claims.

Two of those claims were brought by plaintiffs who sought relief under California law.

The third claim was one for wrongful death, brought pursuant to Arizona law.  The claims

of all three arose out of accidents said to have been caused by tread separation in tires

manufactured by Bridgestone/Firestone.  Each of the plaintiffs claimed that, despite

knowledge of the tire separation, they were unaware that manufacturing defects caused by

Bridgestone/Firestone may have caused or contributed to the cause of their accidents prior

to their receipt of the notice that the tires were being recalled and/or their accessing media

reports informing the public of a large number of similar incidents involving the same

tires.  Both California and Arizona courts apply the discovery rule under certain specified

circumstances.  Based on our analysis of the California and Arizona case law interpreting

those circumstances under which the discovery rule is applied, we held that the facts in all

three cases were such that we could not rule as a matter of law that the discovery rule did

not apply.  Summing up our assessment of the two California claims, we stated as follows:

> Finally, and perhaps most importantly at this procedural juncture, resolution of the discovery inquiry is normally a question of fact.  Unless the uncontradicted facts are susceptible of only one legitimate inference - that the plaintiff discovered or should have discovered her claim more than a year before filing suit - then summary judgment must be denied.

*Id.* at 988 (citations omitted).  We also emphasized in that opinion that "varying factual records and governing state laws may well produce different outcomes" in different cases.  *Id.* at 985.

The obvious question here, in Creel's case, is whether Louisiana courts interpret their discovery rule any differently than do the California or Arizona courts.  Our review leaves us convinced that, while Louisiana courts apply its discovery rule in somewhat more limited circumstances, we lack a sufficient, factual basis for determining whether, as a matter of law, it should be applied here.  To repeat the familiar rule:  summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Summary judgment should be entered after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish an essential part of her case for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  We concede that this is a close call, but ultimately we are not satisfied that the summary judgment standard has been met here by Defendants.

In the most recent reported Louisiana decision which addresses the doctrine of

*contra non valentum*, the Court of Appeals of Louisiana stated:

> To avoid the running of prescription under the doctrine of *contra non valentum*, the plaintiff must show not only that he did not know facts upon which to base his claim, but also that he did not have reason to know or discover such facts and that his lack of knowledge was not attributable to his own neglect. *Hospital Service District No. 1 of Jefferson Parish v. Alas*, 94-897, p. 9 (La.App. 5 Cir. 6/28/95), 657 So.2d 1378, 1383 (*citing Corsey v. State Dept. of Corrections*, 375 So.2d 1319 (La.1979). As this court has repeatedly held, prescription begins to run when the plaintiff has "constructive knowledge" of his injury, which is information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. *Asbestos Plaintiffs v. Borden, Inc*, 01-1379, pp. 3-4 (La.App. 4 Cir. 8/14/02), 826 So.2d 581, 586; *Adams v. First National Bank of Commerce*, 93-2346, 94-0486 (La.App. 4 Cir. 9/29/94), 644 So.2d 219, 223.

*Wilhike v. Polk*, __So.2d __, 2008 WL 4952780, (La. App. 4 Cir. 11/19/2008).

In one of its early discussions of the doctrine, the Supreme Court of Louisiana noted that:

> The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful and does not result from negligence, and the doctrine has been limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt. *See, Ayres v. New York Life Ins. Co.*, *supra*. Also, it is not necessary that the party have actual knowledge of the conditions as long as there is 'constructive notice.' Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.

*Cartwright v. Chrysler Corp.*, 232 So.2d 285, 287 (La. 1970). However, this

interpretation was tempered by a later opinion in which the Court quoted the above

provision in *Cartwright*, but added:

The language in *Cartwright*, quoted in footnote 1, is an incomplete definition of the kind of notice that will start the running of prescription. Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong.  Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage.  On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.

*Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La. 1987).

More recently, when faced with another requested application of *contra non valentem,* the Louisiana Supreme Court began its discussion of the doctrine as follows:

At the outset, we observe that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. *Foster v. Breaux*, 263 La. 1112, 270 So.2d 526, 529 (1972); *Knecht v. Board of Trustees for Colleges and Universities*, 525 So.2d 250, 251 (La.App. 1st Cir.), *writ denied*, 530 So.2d 87 (La.1988). To soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit. *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La.1992); *see also, Plaquemines Parish Com'n Council v. Delta Development Co., Inc*., 502 So.2d 1034, 1054 (La.1987); *Cartwright v. Chrysler Corp*., 255 La. 597, 232 So.2d 285, 287 (1970); R.O.M., Note, *Gover v. Bridges: Prescription-Applicability of Contra Non Valentem Doctrine to Medical Malpractice Actions*, 61 Tul.L.Rev. 1541, 1541 n. 1 (1986-1987).

*Contra non valentem* is a Louisiana jurisprudential doctrine under which prescription may be suspended.  *See* Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b), 222 (1996); see also, R.O.M., *supra*.  Moreover, it is an equitable doctrine of Roman origin, with roots in both civil and common law, and is notably at odds with the public policy favoring certainty underlying the doctrine of prescription.

*Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005).

Based on our review of these and other related decisions by the Louisiana courts, we find that the Supreme Court of Louisiana has, over time, expanded the circumstances under which it permits the doctrine of *contra non valentem* to apply, and, more specifically, that basis for invoking the doctrine known as the "discovery rule."  As confirmed as recently as this past November in the decision by the Louisiana Court of Appeals in *Wilhike*, a plaintiff may not simply ignore facts which would otherwise prompt a reasonable person to explore who might be liable to them for an injury he/she suffered.

The record currently before us in Creel's case is too meager in terms of factual specificity to permit a reliable determination to be made as a matter of law regarding whether Creel acted reasonably following the accident with respect to exploring the possible causes of the tire tread separation or any other circumstances that may possibly have contributed to her loss of control of the vehicle.  All we have been provided in terms of evidence on this issue is a few lines excerpted from a deposition by Creel in which she describes what she heard and felt at the time of the accident.  A multitude of other, highly relevant questions present themselves:  What did the police report say?  Did anyone perform any investigation into the accident or assess the condition of the tire or the roadway?  What did Creel believe at the time was the cause of her accident and what prompted that belief?  When did she first consult an attorney?  This and other similar information, which, by the way, was fully developed in the submissions presented to the Court in the cases predicated upon California and Arizona law on which we ruled previously, is missing here.  In our view, without such factual development, no reliable

decision regarding the discovery rule can be forthcoming, particularly given that our determination could have the effect of preemptively barring Creel's entitlement to any relief as a matter of law.  *See Carter v. Haygood*, 892 So.2d at 1268.

We acknowledge that it was and remains Creel's burden to prove the applicability of the discovery rule, and, while we have no intention of relieving her of that responsibility, the record before us is so sparse and so unclear that no inferences can be reasonably drawn regarding what she knew, what actions, if any, she took toward acquiring an understanding of the cause of the accident and, therefore, whether it was reasonable for her to wait several years before filing suit against Defendants in Mississippi.

Accordingly, the parties are allowed an additional forty-five (45) days within which to conduct the referenced discovery on the issues arising from the proposed application of the doctrine of *contra non valentem,* after which Defendants are allowed thirty (30) days to revisit these issues in a supplemental summary judgment motion. Plaintiff may respond to any supplemental summary judgment motion filed by Defendants within twenty (20) days after the motion is filed; Defendants may respond by filing a reply brief within ten (10) days of the filing of Plaintiff's response.  No extensions of these deadlines will be permitted by the Court absent truly exigent circumstances.  If no additional discovery is undertaken by Plaintiff or factual supplementation made by her to her contention that this doctrine applies here, final judgment shall be entered in Defendants' favor, based on the original summary judgment motion and Plaintiff's failure to sustain her burden of proof

that the doctrine applies and that her claims against Ford and Bridgestone/Firestone are still viable under Louisiana law.

*CONCLUSION*

For the reasons explicated here, Defendants' Motion For Leave to File Reply Memorandum (S.D. Ind. cm/ecf Docket # 4) is GRANTED, Plaintiff's Motion to Remand (W.D.La. cm/ecf Docket # 20) is DENIED, and Defendants' Motion For Summary Judgment (S.D. Ind. JAMS Docket #4) is DENIED, subject to further consideration by the Court.

IT IS SO ORDERED  01/09/2009

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

George Arbour
ARBOUR & AYCOCK
P.O. Box 155
West Monroe, LA 71294

William J. Hamlin
HAMLIN & GRIFFIN LLC
71648 Maple Street

Abita Springs, LA 70420

Keith W. McDaniel
MCCRANIE SISTRUNK ANZELMO
HARDY MAXWELL & MCDANIEL
195 Greenbriar Blvd.
Suite 200
Covington, LA 70433

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Stephen W. Mullins
LUCKEY & MULLINS
P.O. Box 724
Ocean Springs, MS 39566

Randall R. Riggs
LOCKE REYNOLDS LLP
rriggs@locke.com