UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re Bridgestone/Firestone, Inc. ) | Master File No. 1:00-ml-09374-SEB-JMS |
| Tires Products Liability Litigation ) | MDL No. 1373 |
| ) | |
| SOFIA de MANEZ LOPEZ, et al., ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:03-cv-05790-SEB-JMS |
| ) | |
| FORD MOTOR COMPANY, et al., ) | |
| Defendants. ) | |

# Order on Renewed Motion for Sanctions
# and Petition for Instruction

## Introduction

On December 18, 2006, this court entered sanctions against Dr. Leonel Pereznieto, a lawyer and law professor from Mexico, for his role in a course of conduct that defrauded the "U.S. and Mexican courts." 470 F.Supp.2d 931, 933-34 (S.D. Ind. 2006). Pereznieto appealed on a number of grounds. The Seventh Circuit Court of Appeals upheld this court's determination that it has personal jurisdiction over Pereznieto, but vacated the sanction and remanded because it determined that he had not had adequate notice of and opportunity to respond to the potential for sanctions against him. After the Seventh Circuit's remand, the defendants, Ford Motor Company ("Ford") and Bridgestone Firestone North American Tire, LLC ("Firestone") renewed their motion for sanctions against Pereznieto (MDL Dkt. 4041), and on February 23, 2009, this court held a hearing at which Pereznieto personally appeared and offered evidence on his own behalf. Then, in December 2009, the court received a packet of materials asserted to be evidence relevant to the sanctions issue. The parties have now briefed their respective positions on what disposition the court should make of those materials. (*See* Dkt. ## 16, 17, 18, and 19.)

1

The purpose of this order is to assess Pereznieto's role in the fraudulent conduct in light of the evidence properly before the court – including that offered by Pereznieto on February 23, 2009 – and to determine what sanction against him, if any, is appropriate in light of that role.

## Procedural Background

A brief recitation of the proceedings that led to the February 23, 2009 hearing is appropriate.

### A. The *Forum Non Conveniens* Issue in the District Court

Plaintiff Sofia de Manez Lopez sued Ford and Firestone in the United States on behalf of herself and her children after her husband was killed in Mexico in an accident that involved Ford and Firestone products. The case was transferred to this court as part of the consolidated MDL proceedings, and the defendants filed a motion to dismiss for *forum non conveniens*. In opposing dismissal on *forum non conveniens* grounds, the plaintiffs did not argue that Mexico was not an adequate alternative forum, but asserted only that the private and public interest factors weighed against dismissal. This court rejected the plaintiffs' argument and granted the motion to dismiss.

### B. The Morelos Rulings and Pereznieto's Affidavit

On appeal to the Seventh Circuit, the plaintiffs again initially argued only that this court abused its discretion in weighing the private and public interest factors and did not argue that Mexico was not an adequate alternative forum. The Seventh Circuit found that the case would have been "an easy candidate for a straightforward affirmance" on the record before the district court. 420 F.3d 702, 705 (7th Cir. 2005).

The case took a dramatic turn, however, when the plaintiffs made a supplemental filing with the Seventh Circuit, after oral argument and while the appeal was pending. In that filing, the plaintiffs asserted that a court in Morelos, Mexico, had determined – and an appeals court

had affirmed – that Mexican courts did not have jurisdiction over Ford and Firestone and could not hear a personal injury case against them. *Id*. The plaintiffs' supplemental filing included an affidavit from Pereznieto, who opined that the Mexican courts had reached the only result possible under the facts of the case. Thus, according to Pereznieto's affidavit, the assumption heretofore of all parties in this case that Mexico was an adequate alternative forum was wrong. Nevertheless, the Seventh Circuit did not reverse the dismissal, because it had "substantial misgivings about the plaintiffs' actions," *id*. at 706, including the facts that the plaintiffs had not informed Ford and Firestone of the Morelos proceedings or explained why they had sued Ford and Firestone in Morelos, instead of the Mexican state of Veracruz where the accident occurred. *Id*. The Seventh Circuit directed this court to "explore the circumstances" of the Morelos proceedings. It further instructed:

> that[if] the Morelos decisions are not entitled to recognition or [that] the plaintiffs did not act in good faith and manipulated the dismissal of their case in Mexico, the district court should regard itself as free once again to dismiss this complaint. Although it is possible that as a matter of Mexican law, a court in Veracruz might honor the Morelos decisions no matter what, for purposes of U.S. law a forum may not become unavailable by way of fraud.

*Id*. at 707.

### C. Remand on Whether Plaintiffs Had Obtained the Morelos Orders in Good Faith

On remand, this court conducted an inquiry limited to the questions of whether the Morelos orders were obtained in good faith, and, if so, whether they were entitled to recognition. 470 F.Supp.2d at 919-20. The court conducted an evidentiary hearing on September 5 and 6, 2006, and the parties submitted pre- and post-hearing filings. This court detailed its findings in its November 14, 2006 *Entry Regarding Issues on Remand From the Seventh Circuit Relating to Forum Non Conveniens*, 470 F.Supp.2d 917. In short, this court found that the attorneys for the

plaintiffs in the Morelos case had acted with the "clear purpose" of having the case dismissed, and they had "manipulated the process" to insure that the dismissal would be sustained on appeal. *Id*. at 920. The court concluded that the Morelos court's finding that it lacked territorial competence was obtained in bad faith; accordingly, this court renewed its dismissal of the complaint on *forum non conveniens* grounds. *Id*. at 929. That order is not at issue here.

### D. First Sanctions Inquiry and Order

The "circumstances" to which the Seventh Circuit referred – the possibility of bad faith, manipulation, and fraud – also became the subject of investigation by Ford and Firestone. As a result of that investigation, Ford and Firestone moved for sanctions against Pereznieto and several other lawyers. Following this court's evidentiary hearing in September 2006 and the renewed *forum non conveniens* dismissal, this court also ruled on Ford and Firestone's sanctions motion, finding that the two United States lawyers had shown an "indifference to the truth and lack of diligence . . . in monitoring and/or curtailing the actions of their Mexican co-counsel" that multiplied the litigation costs, necessitated additional court proceedings, and delayed resolution of the issues by over a year. 470 F.Supp.2d 931, 933. This court ordered the two U.S. lawyers collectively to pay a sanction of $50,000.[1]

Of particular relevance here, this court found that Pereznieto was "the apparent mastermind" behind frauds on the U.S. and Mexican courts and ordered him to pay a personal sanction of $100,000, half to the defendants and half to the court. This court also struck his opinions offered in any case pending in this multidistrict litigation. Finally, the court barred Pereznieto from providing any testimony against Ford or Firestone in any U.S. court so long as the sanction remains unpaid. *Id*. at 934.

---

[1] That sanction has been paid and is not at issue here.

As explained in the Introduction, that order led to the matters now at hand: Pereznieto's appeal of the sanctions order, the Seventh Circuit's remand, Ford and Firestone's renewed motion for sanctions against Pereznieto, and this court's February 2009 evidentiary hearing.

Pereznieto's conduct that led to the December 2006 sanctions order was, as noted above, the focus of an evidentiary hearing this court held over two days in September of 2006. It was detailed in the court's orders of November 14, 2006 (470 F.Supp.2d 917) and December 18, 2006 (470 F.Supp.2d 931), and will not be repeated with the same thoroughness here. This order will, however, supplement that discussion of the evidence with the evidence offered at the February 2009 hearing at which Pereznieto appeared, participated, and testified.[2]

## Analysis

**A. The court will not consider the Avila Materials.**

Long after the February 2009 hearing this court held on remand, the court received by mail a package apparently sent by Rosa Maria Avila Fernandez, one of the Mexican counsel of record in the Morelos case. That mailing ("Avila Materials") includes her affidavit and a number of documents (primarily emails), some of which had apparently not been produced to Ford and Firestone during their investigation of the Morelos matter.

Shortly after receiving the Avila Materials, the court ordered that they be filed and docketed, and the court also directed counsel to review the materials and "advise the court what disposition or consideration of the materials they request the court to make in connection with

---

[2] Pereznieto suggests in the conclusion to his post-hearing brief that the defendants (and we assume he means this court as well) should not rely on a "record . . . [that] was created without due notice to Dr. Pereznieto and without the benefit of legal counsel." (Dkt. 6 at 9) Pereznieto cites no authority for this comment, and this court knows of no basis for ignoring competent evidence admitted at the first hearing as to which Pereznieto had full advance knowledge and ample opportunity to respond at the second. In addition, the documentary evidence was refiled as exhibits to Ford and Firestone's renewed motion for sanctions.

the pending sanctions matter." (Dkt. 11)  The interested parties (Pereznieto on one hand and Ford and Firestone on the other) made timely responses to the court's order, and each submission included a translation of the Avila Materials.

In Ford and Firestone's view, the Avila Materials bolster their position that Pereznieto was deeply engaged in the fraudulent conduct at issue.  For his part, Pereznieto points out that the evidentiary foundation for the Avila Materials has not been established, nor has their substance been the subject of discovery.

The court must balance competing interests in determining what disposition of the Avila Materials is appropriate.  The Avila Materials include serious accusations and alleged proof of fraudulent conduct directed at United States courts and the defendants.  On the other hand, these materials have not even been offered into evidence and, even if they had been, a foundational basis for them would need to be established.  The substantive matters addressed in them would in all likelihood require the re-opening of discovery.  Re-opening the evidence on the sanctions issue at this juncture would result in significant expense to the parties, further delays of this collateral proceeding that has already been pending nearly four years, and continued demands on the resources of this court.  On balance, the court determines that these concerns militate in favor of bringing finality to this issue.   The court therefore will disregard the Avila Materials in resolving the sanctions issue.  It accordingly DENIES AS MOOT Pereznieto's Petition for Instruction (Dkt.18).

**B. The Seventh Circuit's remand order requires this court to determine what fraudulent conduct was directed at U.S. courts and the extent of Pereznieto's role in that conduct.**

In its decision on Pereznieto's appeal of the sanctions order, the Seventh Circuit held:  (1) that this court has personal jurisdiction over Pereznieto; (2) that if this court in fact had "evaluate[d] Pereznieto's actions before the Mexican courts, apart from anything he reported

6

back to the U.S. lawyers of courts," it lacked authority to do so; and (3) that Pereznieto had not had an adequate opportunity to be heard in the earlier proceedings before this court before monetary sanctions were imposed on him. 533 F.3d 587-88, 593. The court of appeals also found this court's non-monetary sanctions (bars on Pereznieto's testimony in other cases) permissible with respect to MDL cases but overbroad with respect to cases in other courts, but it vacated all of these sanctions as well because they were linked to the vacated monetary sanction. *Id*. at 593.

The Seventh Circuit concluded its analysis by observing, "It is unclear what sanction or sanctions the district court may decide are appropriate, if and when it has the benefit of a full adversary proceeding that includes Pereznieto." *Id*. Having now had that benefit, the court undertakes, as a result of the renewed motion for sanctions, to address the sanctions issue consistent with the Seventh Circuit's directives.

To determine whether Pereznieto's conduct merits sanction, the court must answer two threshold questions: First, the court must define what the fraudulent, bad faith conduct *was.* Second, consistent with the Seventh Circuit's instructions on remand, this court must narrow its focus on the fraudulent conduct to that "directed toward the proceedings in the United States." *Id*. at 588.

Ford and Firestone's arguments are based on a broad view of the fraudulent conduct. In their view, it was wrongful for Pereznieto and the others involved to craft, intentionally, a complaint that would be dismissed. But expecting to lose, planning to lose, and even hoping to lose do not necessarily constitute fraudulent conduct, or at least Ford and Firestone have not presented any persuasive argument or authority for those propositions.

7

That said, the lawyers' conduct in the Morelos proceedings went far beyond crafting a legally deficient complaint. The unrefuted evidence demonstrates that their conduct included secretly using an inside contact at the court to control not only the outcome of the case, but the timing of the decision and the content of the dismissal order, and manipulating the process so that Ford and Firestone had no notice or opportunity to respond.[3] The court has no difficulty labeling this conduct fraudulent or in bad faith.

But an even more significant fraud occurred, from this court's perspective. Plaintiffs' counsel (with Pereznieto leading the effort) misrepresented the *product* of their manipulations and improper contacts to the Seventh Circuit Court of Appeals as something it was not: a legitimate jurisdictional determination of the Mexican courts.

Pereznieto urges that his conduct, even if wrongful, was not directed at the United States but at the Mexican courts. The evidence indisputably demonstrates, however, that the entire course of conduct of Pereznieto and his co-counsel was directed at a single purpose: to fabricate proof that Mexico did not afford the plaintiffs an adequate forum because Mexican courts would refuse jurisdiction over their claims. There is therefore no principled basis for concluding that any facet of their fraudulent conduct was not "directed toward the proceedings in the United States." Indeed, in this court's view, the fraud perpetrated at the Seventh Circuit—the misrepresentation of what the Morelos orders really were—was the most significant fraud, and it was indisputably directed at proceedings in the United States.

The court has found that the Morelos orders were not obtained in good faith and that they were obtained solely to mislead United States courts. The question presented by the renewed

---

[3] The record reveals a number of other instances of improper conduct – including *ex parte* contacts with the judge – but the court will focus on the conduct as to which the record unambiguously demonstrates Pereznieto's knowledge.

motion for sanctions is whether Pereznieto's knowledge and role in the fraud merits personal sanction against him and, if so, what sanction. After review of the evidence presented, including Pereznieto's testimony, this court finds that Pereznieto had knowledge of key elements of the fraud, was fully immersed in the Morelos proceedings, and had a significant financial stake in the outcome inconsistent with the limited role he now claims.[4] Moreover, as noted above, Pereznieto was directly involved in the presentation to the Seventh Circuit of fabricated legal authority.

### C. Pereznieto's involvement in fraudulent or bad faith conduct directed at proceedings in U.S. courts merits sanction.

Pereznieto urges that, with their renewed motion for sanctions, Ford and Firestone seek to hold him "vicariously liable" for the conduct of other lawyers and that he was merely a "consultant," "referral attorney," "expert witness," or "liaison." That attempt to minimize his role does not square with the evidence.

1. Pereznieto misrepresented his knowledge of the Morelos complaint.

Pereznieto unequivocally declared at least three times during his testimony at the February 23, 2009 hearing that he did not review the complaint filed in the Morelos court. His knowledge of that complaint is important because, among other things, it identifies Pereznieto as the plaintiffs' lead counsel. Pereznieto's denials are contradicted by all the other evidence. (Tr. 46-47). Emails Pereznieto received from the other Mexican attorneys showed that he had received the complaint to review and that he had even made changes to it. (Exs. 28, 29).[5] After receiving an email to inform him that Alberto Guerrero would be sending him revisions to the

---

[4] Pereznieto also failed to disclose his contingent financial interest to the Seventh Circuit when he presented himself as an "expert."

[5] Citations to exhibits are to the exhibits filed in support of Defendants' Renewed Motion for Sanctions.

complaint, Pereznieto sent an email to Guerrero to assure him, "[W]e'll proceed to include your observations to create a better document." (Ex. 28). In fact, Alberto Guerrero sent Pereznieto an email with the complaint attached and solicited his comments. (Ex. 28). Pereznieto's testimony in this regard is simply not credible.

        2. <u>Pereznieto knew the Morelos order was obtained through an inside contact at the court.</u>

Pereznieto failed to disclose in the affidavit he filed with the Seventh Circuit that Juan Carlos Guerrero Valle's sister was a *secretaria de acuerdoes* for the court in which Plaintiffs' lawsuit was filed.[6] Even though Pereznieto testified that Juan Carlos was the lead attorney for the Mexican case, his name was entirely left off the initial pleading and Pereznieto's name was listed as lead counsel instead. It is undisputed that Juan Carlos's sister would have had to recuse herself from participating in the case if her brother had been listed as an attorney for a party, which suggests that his name was left off the pleading to allow his sister to manipulate the case. Juan Carlos's sister even co-signed the order the plaintiffs had submitted.

Pereznieto concedes that this activity was improper, but claims he did not have any knowledge of it. His claim is rebutted by two emails, however, in which Pereznieto referenced Juan Carlos' "contacts" at the Cuernavaca courts. (Ex. 25, 26). Pereznieto attempts to explain those emails by claiming he was referring to local counsel, but there was never any indication that local counsel other than Juan Carlos had been hired or of who it was. In fact, Pereznieto referred in an email to the "contacts **at the Cuernavaca courts**."[7] (Ex. 25) (emphasis added). The court finds Pereznieto's explanation implausible and not worthy of credence.

---

[6] A *secretaria de acuerdoes* is an attorney and has a role similar to that of a law clerk.

[7] Cuernavaca is a city within the Mexican state of Morelos.

3. <u>The appeal of the Morelos order reveals Pereznieto's involvement in the fraudulent strategy.</u>

Pereznieto's involvement in the actions and strategy of the Mexican proceedings directed toward U.S. courts is also illustrated by his participation in the decision to appeal the Morelos order – not to have it reversed, but as Juan Carlos wrote, to "confirm the denial." (Ex. 31). Pereznieto agreed, "I think the appeal is very important because it would mean that there was no other remedy, at least for now, and it would confirm the rejection ruling issued by the first Judge." (Ex. 31). Shortly thereafter, Pereznieto had eagerly offered to submit to the Seventh Circuit an affidavit regarding the probable outcome of the appeal. (Ex. 33). Alberto Guerrero informed Pereznieto in an email, though, that he did not want to file the affidavit in the Seventh Circuit yet to prevent Ford and Firestone from finding out about the Morelos order and becoming involved in the appeal. (Ex. 33). Despite this clear evidence that Pereznieto knew of the strategy to keep Ford and Firestone in the dark and acquiesced in that strategy, Pereznieto testified at the hearing that Guerrero had told him nothing more than that "it wasn't the right time" to file the affidavit. (Tr. 58). Again, Pereznieto's testimony on this point is unbelievable. The court concludes that Pereznieto knew of and acquiesced in the plan to hide the Mexican proceedings from Ford and Firestone until it was too late for them to appear to assert their interests in those proceedings.

4. <u>Pereznieto's compensation reflects his immersion in the fraudulent activity.</u>

Pereznieto's compensation arrangement points to his involvement in and knowledge of the activities of the U.S. and Mexican lawyers. The Mexican lawyers, including Pereznieto, entered into a written fee agreement with the U.S. lawyers on July 9, 2004. Significantly, Pereznieto's compensation from the plaintiffs' attorneys was included as a package along with that of the Mexican attorneys. Pereznieto and the other Mexican attorneys were promised a

11

contingency fee of 25% of the U.S. lawyers' 40% share of any gross recovery (or 10% of the gross recovery) based on a single contingency: success in having the Mexican case dismissed. In addition, they were paid $20,000 for "expenses," but were not required to keep any accounting of how the money was spent, and Pereznieto offered no evidence of actually having incurred any expenses.

This amount of compensation is inconsistent with Pereznieto's after-the-fact protestation that his only role was to refer the case to a Mexican lawyer.[8] The fact that Pereznieto was included in the same contingent compensation pool as the other Mexican lawyers is inconsistent with his testimony that his role was merely to "refer" the case to them. And there is no evidence that Pereznieto took any steps to minimize his involvement or clarify his role.

### D. A sanction is necessary to reimburse the defendants for the additional expenses Pereznieto's conduct caused, to ameliorate the burdens he placed on this court, and to reflect the egregiousness of his conduct.

Of particular concern to this court is that Pereznieto "just doesn't get it." Throughout the February 23, 2009 hearing, he refused to acknowledge that many of his actions were wrong, and he blamed the defendants' attorneys for the ethics questions that surround him. When the court asked whether he suffers from a stigma because of sanctions imposed by Mexican authorities for his conduct, Pereznieto replied, "The gentleman of Ford and Firestone have for the past three years tried to stigmatize me." (Tr. 52). When asked whether he regrets his actions, Pereznieto responded,

> Yes, I absolutely and sincerely apologize. I truly am sorry for what I believe are indirect – the results – indirect results of my behavior. I believe it's motivated by the persistence of the gentlemen from Ford and Firestone to sully my name.

---

[8] This assertion is also an about face from Pereznieto's earlier position that Ford and Firestone could not take his deposition because he had an attorney/client relationship to protect.

(Tr. 53). Pereznieto also placed any blame for the actions or decisions that occurred in the Mexican courts on the other Mexican lawyers (Tr. 55) and blamed the American lawyers for hiding the events from Ford and Firestone (Tr. 58)—all attributions inconsistent with the extensive evidence of Pereznieto's knowledge and involvement. In short, Pereznieto has not offered an unqualified apology and has not acknowledged that his conduct was wrongful. Furthermore, the only concern he has expressed about the repercussions of this conduct is how they have affected *him*.

This court will not speculate whether Pereznieto's motives were for monetary gain, advancement of a legal theory that he has championed, or some other reason. But his fraudulent conduct had the effect of prolonging these proceedings, causing the defendants to incur substantial extra expenses, and burdening the resources of this court. Pereznieto must bear some portion of those costs, even though the court assumes that the monetary sanction it imposes will represent only a modest fraction of the actual costs.

The court renews its monetary sanction of $100,000.00, to be paid by Pereznieto, half to Ford and Firestone, and half to the clerk of this court. In addition, the court bars Pereznieto from offering expert opinion in any case pending in this MDL and hereby STRIKES any such opinion he has already offered in this MDL.

## **Conclusion**

Ford and Firestone's renewed motion for sanctions is granted. The court's sanctions order is as follows: Pereznieto shall pay a sanction of $100,000.00, half to Ford and Firestone and half to the clerk of this court. In addition, the court bars Pereznieto from offering expert opinion in any case pending in this MDL and hereby strikes any such opinion he has already offered in this MDL. Pereznieto's Petition for Instruction is denied as moot.

So ORDERED.

Date: __06/11/2010__

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Wade C. Crosnoe
THOMPSON, COE, COUNSINS & IRONS, LLP
wcrosnoe@thompsoncoe.com

Kevin Dubose
ALEXANDER DUBOSE JONES & TOWNSEND
1844 Harvard Street
Houston, TX 77008

Phillip B. Dye Jr.
VINSON & ELKINS LLP
pdye@velaw.com

Evan Nicholas Kramer
THOMPSON COE COUSINS & IRONS LLP
One Riverway
Suite 1600
Houston, TX 77056

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Knox D. Nunnally
VINSON & ELKINS LLP
knunnally@velaw.com

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Roger H. Reed
REED CARRERA & MCLAIN LLP
1 Paseo Del Prado
Bldg. 1
Edinburg, TX 78539

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Randall R. Riggs
FROST BROWN TODD LLC
rriggs@fbtlaw.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

Gordon E. Tabor
TABOR LAW FIRM
gtabor@taborlawfirm.com

Robert B. Waltman
WALTMAN & GRISHAM
707 Texas Avenue
Suite 106D
College Station, TX 77840