UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION _____ THIS DOCUMENT RELATES TO ALL ACTIONS | ) Master File No. IP 00-9374-C-B/S ) MDL No. 1373 ) (centralized before Hon. Sarah ) Evans Barker, Judge) ) ) ) ) ) |

# Order Relating to Conclusion of Multidistrict Proceedings and Provisions for Cases on Remand and for Access to Discovery Materials by Non-Consolidated Litigants

This Order is intended to summarize proceedings in this Court and to resolve various issues upon conclusion of multidistrict proceedings. This Order further establishes orderly procedures for the benefit of litigants in cases remanded to transferor courts, as well as litigants in non-consolidated actions that involve subject matters related to the subject matter of this MDL proceeding.

### A. Background of the Proceeding

This multidistrict proceeding was initiated by an Order of the Judicial Panel on Multidistrict Litigation ("JPML") dated October 26, 2000. That Order consolidated fifty-two actions, including both personal injury cases and purported class actions seeking economic damages, for pretrial proceedings, pursuant to 28 U.S.C. § 1407, and transferred them to this Court for centralized proceedings. The JPML determined that those actions raised similar questions regarding ATX, ATX II and Wilderness AT tires produced by Bridgestone/Firestone, Inc. ("Firestone"), primarily in their use with certain vehicles manufactured by Ford Motor Company ("Ford") and that the litigants would benefit from proceedings centralized before this

Court. After that time, additional cases were consolidated in this proceeding. "Consolidated Action" in this Order refers to any case transferred to or otherwise a part of MDL No. 1373, except to the extent that this Order conflicts with an order of a state court issued following remand of a transferred case to state court for lack of federal subject matter jurisdiction.

The majority of the Consolidated Actions were resolved by settlement, judgment, remand to state court, or dismissal. The remainder of the cases have now been remanded to various federal courts for final disposition.

B.  **Organizational Structure and Case Management**

On November 22, 2000, the Court entered its Order on Organizational Structure and Discovery. That Order, supplemented by subsequent Orders, created a Plaintiffs' Executive Committee that was charged with "direct[ing] all aspects of the litigation on behalf of Plaintiffs." See Order on Plaintiffs' Management Structure and Various Case Management Matters, dated December 8, 2000. Reporting to the Plaintiffs' Executive Committee were the following six committees: Budget/Records/Compensation; Liaison; Law; Trial; Settlement/ADR and; Discovery/Experts. Each Committee had representatives from both the personal injury and the proposed class action cases.

C.  **Discovery**

Through a process involving a series of Orders entered by this Court and continuous supervision by the Magistrate Judge and the Special Master, the Court provided for comprehensive "core"[1] and case-specific discovery for the Consolidated Actions. Core

---

[1] The term "core" refers to discovery taken without reference to a particular action and potentially applicable to multiple actions. Because of the breadth of the proceeding, which included a range of distinct tires and vehicles produced over a multi-year time period, and the differing legal theories asserted in different actions, all core discovery is not necessarily pertinent to each of the consolidated actions.

discovery was broad in scope and provided for disclosure of pertinent information relating to the products involved in the proceeding and issues raised regarding the products. The Court expended significant effort to assure that the core discovery would avoid duplicative discovery in individual actions, and would also be conducted for the benefit of and be provided to non-consolidated litigants.[2]

Among the discovery conducted under the Court's supervision were the following:

1. <u>Document Repositories</u>

At the outset of this proceeding, defendants Firestone (now Bridgestone Americas) and Ford were already in the process of compiling documents that would be subject to production in the Consolidated Actions and related litigation. The Court entertained briefing and discussion regarding the nature and methodology of those large-scale productions. Ultimately, the Court entered separate Orders approving the document repositories established by Firestone and Ford (Docket Nos. 739 and 737). Firestone established a hard copy document repository in Akron, Ohio as well as a compilation of CD-ROMs comprising the documentary materials in its repository, which it made available through a vendor. Ford established a "virtual" repository through its www.Forddocs.com website. Through these devices, defendants Firestone and Ford have made available and continue to make available production materials to the consolidated plaintiffs and litigants in related non-consolidated actions. Bridgestone Corporation ("Bridgestone") provided and continues to make available documents in hard copy form.

---

[2] This process included appointment of a Liaison Committee to facilitate discovery coordination with non-consolidated actions; efforts by all parties to coordinate with non-consolidated litigants to assure their participation in discovery; and extensive efforts by the Court to work with other courts before which non-consolidated actions were pending to coordinate discovery issues.

3

The defendants were permitted to designate produced materials confidential, pursuant to the Court's March 7, 2001 Confidentiality Order. That Order provided specific limitations on the use and dissemination of materials so designated, as well as procedures to address challenges to confidential designations.

2. Core Depositions

The Court provided for core depositions to be taken during a period extending from March 2001 to February 2002.[3] During that period, approximately 120 witnesses gave core depositions. The procedures applicable to these depositions, including advance coordination of subject matters, multiple questioners, and extended time limits, were designed to permit comprehensive examination of subject matters related to this litigation.

The defendants were permitted to designate portions of depositions confidential, pursuant to the Court's March 7, 2001 Confidentiality Order. That Order provided specific limitations on the use and dissemination of materials so designated, as well as procedures to address challenges to confidential designations.

3. Expert Discovery

On April 23, 2002, the Court approved the joint stipulated Order on expert discovery entered into by the parties. The procedures set forth in that Order provided for core depositions of experts involved in multiple cases, with extended time limits and the opportunity for multiple questioners, as well time limited case-specific follow-up depositions of the same experts. Pursuant to these procedures, approximately twenty experts gave core depositions in this proceeding.

---

[3] Core expert depositions, as well as certain core depositions taken with leave of court, were taken as late as February of 2004.

4. <u>Case Specific Discovery</u>

During the course of consolidated proceedings, the Court issued a series of Orders providing deadlines for the conduct of case-specific discovery in each of the consolidated personal injury cases. These Orders, which established schedules based upon the dates that groups of cases were consolidated in the multidistrict litigation, provided time periods for factual discovery, expert disclosures, and expert depositions. The Court has also actively monitored and supervised the case-specific discovery process through the efforts of the Magistrate Judge. The Magistrate Judge entertained numerous motions with respect to the scheduling process, and generally made herself available to the litigants in order to address and resolve various matters.

Based upon these efforts, case-specific discovery in the Consolidated Actions should be complete, except as delineated in the case-specific remand orders provided by the Court or as permitted by the transferor courts following remand.

**D.    Class Action Litigation**

Pursuant to the CMO, Lead Counsel for the Class plaintiffs filed a Master Class Action Complaint on behalf of various classes of tire and vehicle owners who were seeking economic damages for their purchase of allegedly defective tires and vehicles. Extensive proceedings were held with respect to that complaint, including 1) resolution of defendants' motion to dismiss, which resulted in the dismissal of the plaintiffs' claims under the federal RICO statute, their claims for negligence and redhibition, and their request for a tire recall, 2) discovery on both class certification and merits issues, and 3) resolution of plaintiffs' motion for class certification, which resulted in a ruling by the Seventh Circuit reversing the Court's certification of nationwide

tire and vehicle classes.  The Court has addressed the disposition of the claims of the former class plaintiffs in a separate order.

### E. Access to Discovery by Non-Consolidated Litigants

Following the conclusion of consolidated proceedings in this Court, continuing access to core discovery materials generated and disclosed by defendants Firestone, Ford and Bridgestone Corporation (the "MDL defendants") shall be governed by the following provisions:

1. "Core" discovery materials are defined as (a) interrogatories, production requests, requests for admissions and responses thereto propounded as applicable to multiple Consolidated Actions; (b) depositions taken in this litigation applicable to multiple Consolidated Actions; (c) documents produced as applicable to multiple Consolidated Actions.  Core discovery materials do not include materials provided in and applicable only to individual consolidated cases.  Core discovery materials also do not include discovery governed by or otherwise subject to orders relating to coordinated procedures employed by various state courts; nothing in this Order is intended to modify or conflict with coordination or case management orders entered by state courts.

2. Following the closure of this proceeding, Firestone, Ford, and Bridgestone will each retain copies of (a) all core depositions; (b) all core interrogatories, core production requests, core admission requests served upon that MDL defendant, together with responses thereto; and (c) all core documents produced by that MDL defendant.  In any action pending against Firestone, Ford, or Bridgestone in any federal, state, or territorial court in the United States involving product liability claims relating to Firestone ATX or Wilderness AT tires (or tires that are "common green" to those types) or to Ford Explorer, Mercury Mountaineer, or

Mazda Navajo vehicles, these materials shall be made available to any litigant by any former MDL defendant that is a party defendant in that non-consolidated action, upon the following terms:

      A.    Request must be made by the litigant to the defendant from whom core materials are requested.

      B.    The defendant providing copies of core materials may charge the litigant reasonable reproduction or access charges or may refer the litigant to authorized vendors who provide reproductions or access at reasonable charges.

      C.    The litigant shall be required to enter into a protective or confidentiality Order or stipulation, to be entered by the court in which the litigant's action is pending, providing terms agreeable to the parties or as ordered by the court in which that case is pending.

3.    With the exception of depositions, the MDL defendants are not required to maintain or provide core discovery materials generated by other parties. Further, no MDL defendant shall produce any documents or materials generated by another MDL defendant and subject to this Court's Confidentiality Order or other confidentiality or limited access provisions entered by this Court.

4.    Defendants Firestone and Ford have produced core documents through electronic means, Firestone by providing a compilation of CD-ROMS through a vendor and Ford through its www.forddocs.com website. These electronic compilations shall continue to be made available to litigants upon the terms set forth in section E.2. until December 31, 2015, unless such time period is modified by further Order of this Court. During that period, Firestone and

Ford may alter or amend these production methods to accommodate advances in technology, to capture reasonable efficiencies, or to avoid unnecessary expense, provided that such changes do not materially inhibit access to and use of the produced documents by authorized litigants.

5. The Confidentiality Order entered in this litigation on March 7, 2001 shall remain in full force and effect, and confidential materials produced pursuant to these provisions shall continue to be subject to the provisions of the Confidentiality Order.

**F.  Evidence Preservation Orders**

The Court has entered a series of Orders providing for the preservation of various items of evidence:

Order on Organizational Structure and Discovery (Docket 163)

Case Management Order, Section VII, C (Docket 480)

Order Emphasizing that Companion Tires are Included in the Court's November 22, 2000 Order Regarding Preservation of Physical Evidence (April 5, 2002; Docket 3572)

Order Regarding Firestone's Preservation of Electronic Data (March 15, 2001; Docket 736)

Order Regarding Ford's Preservation of Electronic Data (March 15, 2001; Docket 738), as modified by Order dated November 14, 2003 (Docket 1399)

Tire Preservation Order (March 6, 2001; Docket 697)

The Court hereby modifies its prior evidence preservation orders as follows:

1. All tires involved in the accident at issue in any specific claim asserted in any Consolidated Action, including any companion tires in use on the same vehicle at the time of the accident, and any vehicle involved in the accident underlying any specific claim asserted in any Consolidated Action shall continue to be preserved and shall not be altered, modified, or

subjected to any destructive procedures absent agreement of the parties or court order.  The preservation obligation under this paragraph shall terminate when all proceedings related to that specific action shall have fully and finally ended by way of complete settlement and/or dismissal with prejudice or final judgment.

      2.      All materials maintained in Firestone's and Ford's document repositories shall be maintained until December 31, 2015, as provided in Section E.4 above.

      3.      The Court's Orders relating to preservation of electronic data and tires (Docket Nos. 738, 736 and 697) are dissolved and withdrawn.  Defendants Ford and Firestone may resume their normal procedures relating to the retention and disposition of data governed by those orders.

      **G.**      **Provisions for Cases on Remand to Transferor Courts**

In order to assure the benefits of the consolidated proceedings to all parties, and to provide for the efficient disposition of personal injury cases remanded from the multidistrict proceeding, the Court establishes the following procedures applicable to cases on remand to the transferor courts:

      1.      Core discovery, including Core Expert Discovery, is now closed in the MDL and should not be reopened absent a showing of good cause.

      2.      This Court has generally decided not to make rulings on issues relating to expert qualifications and the admissibility of expert testimony pursuant to Federal Rule of Evidence 702 (including determinations pursuant to *Daubert* and its progeny), believing those matters are better addressed in case-specific contexts by the transferor courts.  Pursuant to the Court's Orders, the litigants have been required to file notices in the multidistrict proceedings of their

intent to pursue *Daubert* motions as to specific cases. This Court leaves to the discretion of the transferor courts the scheduling of and procedures for addressing those issues.

3. Because of the significant volume of discovery in the multidistrict proceedings, this Court recommends that transferor courts establish appropriate procedures in each case on remand (1) for the identification and disclosure of exhibits and deposition testimony to be used at trial, (2) for the timing and methodology of those disclosures, and (3) for designations, counter-designations, and the handling of evidentiary objections and issues that will undoubtedly arise.

IT IS SO ORDERED.

Date: 12/30/2011

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to Counsel of Record